UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSELIA A.,<br><br>   Plaintiff,<br><br>  v.<br><br>LELAND DUDEK, Acting Commissioner,<br><br>   Defendant. | Case No. 3:24-cv-04997-JSC<br><br>**ORDER REVERSING IN PART AND REMANDING FOR FURTHER PROCEEDINGS**<br><br>Re: Dkt. Nos. 8, 12 |

Plaintiff seeks social security benefits for a combination of physical impairments including degenerative disc disease, osteoarthrosis of bilateral knees, obesity, hypertension, type II diabetes mellitus, mild anemia, mild obstructive sleep apnea, and adrenal insufficiency. (Administrative Record ("AR") 95-96, 442.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying her benefits claim. After careful consideration of the parties' briefing, the Court concludes oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), REVERSES the ALJ's decision in part and REMANDS for further proceedings. Substantial evidence does not support the ALJ's findings as to Plaintiff's subjective pain testimony or as to the persuasiveness of Dr. Beltran's findings regarding Plaintiff's limitations.

## BACKGROUND

### A. Procedural History

Pursuant to the Social Security Act, on July 14, 2021, Plaintiff filed an application under Titles II for disability insurance benefits alleging a disability onset date of September 4, 2020. (AR 93, 630.) Plaintiff's application was denied initially and upon reconsideration. (AR 93, 442-474.) Plaintiff submitted a timely request for a hearing before an Administrative Law Judge (ALJ). (AR

1   93.)  A telephone hearing was held on September 13, 2023 at which Plaintiff, assisted by a

2   Spanish language interpreter, and a vocational expert testified. (AR 415-440.)  On October 31,

3   2023, the ALJ issued an unfavorable decision finding Plaintiff was not disabled within the

4   meaning of the Social Security Act. (AR 93-110.)

5        Plaintiff filed a timely request for review with the Appeals Council, which the Appeals

6   Council denied. (AR 1-4.) Plaintiff thereafter filed the underlying action. In accordance with Civil

7   Local Rule 16-5, the parties filed cross briefs on appeal. (Dkt. Nos. 8, 12.[1])

**B.     Issues for Review**

1. Did the ALJ err in failing to find Plaintiff's secondary adrenal insufficiency a severe impairment at step two?

2. Did the ALJ err in evaluating Plaintiff's subjective symptom testimony?

3. Did the ALJ err in evaluating the medical evidence?

**LEGAL STANDARD**

A claimant is considered "disabled" under the Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough she is unable to do her previous work and cannot, based on her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, she

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

1  can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to
2  other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on
3  other grounds; *see* 20 C.F.R. § 404.1520(a).

**DISCUSSION**

**I.   THE ALJ'S STEP TWO DETERMINATION**

Plaintiff challenges the ALJ's determination at step two that Plaintiff's secondary adrenal insufficiency due to high doses of dexamethasone was not a severe impairment. (AR97.) An impairment is considered severe if it "significantly limits the claimant's physical or mental ability to do basic work activities." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th. Cir. 2020) (internal quotation marks and citations omitted).

The plaintiff has the burden to demonstrate the existence of a medically determinable impairment through medical evidence. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also* 20 C.F.R. § 404.1508 (providing claimant must establish existence of medically determinable impairment from "medically acceptable clinical and laboratory diagnostic techniques"). The Ninth Circuit has recognized, however, that the step two inquiry is a "de minimis screening device used to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th. Cir. 2001) (internal quotation marks and citation omitted). Indeed, the ALJ can find an impairment or combination of impairments is non-severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks and citations omitted); *see also* 20 C.F.R. § 416.921(a) (an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities); 20 C.F.R. § 416.909 (impairment must have lasted or must be expected to last for a continuous period of at least 12 months). On review, this Court's duty is to determine "whether the ALJ had substantial evidence to find that the medical evidence clearly established that" Plaintiff did not have a severe mental impairment. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ noted Plaintiff alleged additional medical impairments of "hypertension, type II diabetes mellitus, mild anemia, mild obstructive sleep apnea, and adrenal insufficiency" but

3

concluded these were not severe because "they have not had more than a minimal effect on her ability to carry out basic work activities for a continuous period of 12 months or more." (AR 96.) As to the secondary adrenal insufficiency, the ALJ found it was not severe because once diagnosed, it "improved significantly with a hydrocortisone replacement," and she completed her treatment in July 2023. (AR 97.) Plaintiff contends this was in error because the ALJ failed to consider that her use of the supplement containing dexamethasone was "a major contributing factor to her blood pressure" symptoms of which started in at least March 2021. (Dkt. No. 8 at 10.) Plaintiff insists the adrenal insufficiency was causing other symptoms of high blood pressure, headaches, shortness of breath, nausea, and vomiting.

Plaintiff, however, has not offered medical evidence supporting her theory that the adrenal insufficiency caused the other symptoms and resulted in workplace limitations for a period of 12 consecutive months. The ALJ relied on evidence that once the adrenal insufficiency was identified and she stopped taking the supplement with dexamethasone and started a course of hydrocortisone replacement, her symptoms improved dramatically. (AR 97.) The June 29, 2023 treatment notes from Plaintiff's primary care physician, Dr. Joyce Beltran, indicate that while her adrenal insufficiency and related symptoms of "nausea, vomiting, shortness of breath, orthopnea, or PND" had improved, she was still experiencing symptoms of hypertension. (AR 2180-2181, 2189.) So, the record does not support Plaintiff's theory the adrenal deficiency caused her high blood pressure. Further, the ALJ considered whether Plaintiff's symptoms of high blood pressure, headaches, shortness of breath, nausea, and vomiting were severe and concluded they were not. (AR 96.)

The Court cannot substitute its judgment for that of the ALJ. *See Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) ("[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Substantial evidence supports the ALJ's determination that Plaintiff's secondary adrenal insufficiency was not a severe impairment.

## II.     SUBJECTIVE SYMPTOM TESTIMONY

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th

4

Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (cleaned up).

Applying the two-step analysis, the ALJ first determined Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR 100.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms, or else find evidence of malingering. *See Lingenfelter*, 504 F.3d at 1036. The ALJ did not find evidence of malingering, but found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 100.) The ALJ advanced four reasons for discounting Plaintiff's subjective symptom testimony: (1) it was inconsistent with the objective medical evidence; (2) her treatment history was inconsistent with her pain allegations; (3) her activities of daily living; and (4) inconsistency regarding why she stopped working.

### A.     The Objective Medical Evidence

The ALJ found "[t]he objective evidence is not consistent with the severity and frequency of [Plaintiff's] alleged pain and other symptoms." (AR 100.) The ALJ noted first that in 2020 Plaintiff complained of bilateral knee pain, but there were "minimal objective findings." (AR 100.) Not so. In August 2020, Plaintiff saw Dr. Stephen Gregorius, an orthopedist, for bilateral knee pain which was "progressive" over the last four years and worsened with activity. (AR 733.) Dr. Gregorius observed she was "positive for gait problem and joint swelling." (AR 733.) He diagnosed "degenerative changes including joint space narrowing and marginal osteophytic

5

spurring and concluded "[s]he would make a good candidate for a knee replacement surgery based on her bone on bone arthritis." (AR 735, 736.)

The ALJ's statement that the imaging from 2021 "showed only mild degenerative changes," is likewise unsupported by the evidence. (AR 100.) Plaintiff's October 2021 MRI of her knees showed horizontal tears in the body and posterior horn of the medial meniscus in both her right and left knee, as well as osteoarthritis and an injury of the medial collateral ligament on left and right. (AR 941, 979-980.) Her November 2021 cervical and lumbar spine MRIs indicated she had herniation and annular tears of the cervical, lumbar, and thoracic spine with bulging thoracic and lumbar discs. (AR 979.) Dr. Grief recommended injections, but deferred treatment until her diabetes was under control. (AR 980, 989.)

The ALJ's statement that Plaintiff's rheumatologist consult showed "some lower extremity swelling, but otherwise normal findings" is likewise unsupported by the record. (AR 100.) In fact, the rheumatologist noted Plaintiff had daily bilateral knee pain which awakened her at night, daily neck pain which was worse with activity, and midback pain for the past four years which was "worse with sitting for prolonged periods of time" which was consistent with x-rays revealing midback arthritis. (AR 961.) On exam, he found she had bilateral crepitus of her knees, midfoot osteoarthritis, and lower extremity swelling. (AR 962.) Dr. Udwadia did not describe her pain or osteoarthritis as normal.

At multiple points in her opinion, the ALJ discussed how Plaintiff's October 2022 neurological workup with Dr. Shen was hindered because of Plaintiff's "poor effort." (AR 97, 101, 103, 105.) The context of Dr. Shen's statement, however, is critical. According to the treatment notes, Plaintiff demonstrated "[v]ery poor effort with strength testing with giveway in UE and LE **due to pain** especially hip flexors" and "[m]otor exam difficult with patient with poor effort and **giveway due to pain**." (AR 2837.) The ALJ failed to consider the impact of Plaintiff's pain on her effort.

The ALJ's summary of Plaintiff's treatment with Dr. Beltran likewise cherry picks the evidence which supports her finding while ignoring other contradictory evidence. (AR 104.) On Plaintiff's first visit with Dr. Beltran on May 4, 2022, the treatment records state "multiple joint

6

1   pain" and while she was ambulating normally, she reported "intermittent aches and pains on her
2   knees and legs." (AR 2995.) Two months later, Plaintiff was observed to have edema and
3   varicosities, which was consistent with her complaints of joint pain and swelling. (AR 2979,
4   2980.) In August 2020, she continued to have "bilateral LE edema," issues with right hand pain
5   and numbness, and arthritis of the c-spine. (AR 2969.) In February 2023, Dr. Beltran noted
6   "chronic joint issues," her MRI and c-spine show degenerative changes, and she is unable to stand
7   or stay in one position longer than 5 minutes. (AR 2949.) Plaintiff returned three months later
8   following her hospital stay and was described as "acutely ill." (AR 2945.) In June 2023, Dr.
9   Beltran observed Plaintiff was ambulating with a walker, and while Dr. Beltran reports she has
10  been "feeling better," when this treatment note is read in context it appears to relate to her recent
11  hospitalizations for adrenal deficiency. (AR 2934.) A month later, Plaintiff was still using the
12  walker and complaining of bilateral knee pain with radiation to her feet. (AR 2928.) At her
13  October 2023 visit, a month after her ALJ hearing, Plaintiff was continuing to use a walker and the
14  notes indicate she continues to have pain in her keens, arthralgias/joint pain, and "issues with
15  ambulation mainly from pain." (AR 176.)

16  In sum, the ALJ's recitation of the objective medical evidence cherry picks the evidence
17  which supports her finding while ignoring other contradictory evidence. *See Ghanim v. Colvin*,
18  763 F.3d 1154, 1164 (9th Cir. 2014) (finding error when the ALJ's decision did not account for the
19  record "as a whole," but rather relied on "cherry picked" evidence); *Williams v. Colvin*, No. 14-cv-
20  2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (cleaned up) ("An ALJ may not
21  cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider
22  the evidence as a whole in making a reasoned disability determination."). The over 3000-page
23  medical record here is replete with evidence supporting Plaintiff's subjective reports of pain.

24  **B.   Treatment History**

25  Next, the ALJ found "the location, frequency and duration of the claimant's reported
26  symptoms and overall conservative treatment do not support her allegations." (AR 105.) The ALJ
27  noted Plaintiff only received one pain injection, her treatment for her knees was "conservative" as
28  she was "encouraged to stay active and do home exercises," and her pain was "alleviated with

7

1   conservative treatment of naproxen and tramadol." (AR 105 (citing AR 2995).)  Once again, the
2   ALJ has cherry picked specific portions of record to support her conclusion while ignoring the
3   evidence to the contrary.
4       For example, the ALJ's suggestion Plaintiff's treatment was conservative and her pain
5   was well controlled because she only had one injection ignores that Dr. Grief did not want to
6   proceed with additional injections until Plaintiff's hypertension and diabetes was under control.
7   (AR 980, 989.)  "[A]n unexplained, or inadequately explained, failure to seek treatment may be
8   the basis for an adverse credibility finding unless one of a number of good reasons for not doing
9   so applies. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (cleaned up).  The ALJ failed to
10  consider the reason why Plaintiff did receive an additional injection.  Likewise, as to the frequency
11  of her care, the ALJ failed to consider medical records from April 2023 indicating Plaintiff "has
12  been missing follow-up appointments with PCP because of insurance issues." (AR 1784.)  *See*
13  *Orn*, 495 F.3d at 638 ("[d]isability benefits may not be denied because of the claimant's failure to
14  obtain treatment he cannot obtain for lack of funds.").  Finally, Plaintiff's medical records do not
15  reflect her pain was "alleviated" with mediation.  Rather, in October 2022 Dr. Beltran switched
16  Plaintiff from naproxen to nabumetone, added butalbital for pain, and gave her a Toradol
17  injection.  (AR 2963.)  At her next visit in February 2023, she continued to have diffuse body
18  aches and she was referred to a specialist who prescribed celecoxib for pain, but it only "mildly
19  improved" her pain.  (AR 2954.)

20      **C.     Activities of Daily Living**
21      There are several issues regarding the ALJ's reliance on evidence of Plaintiff's activities of
22  daily living.  (AR 106.)  First, while the ALJ relies on Plaintiff's children having noted a decline
23  in her activities of daily living as of March 2023, there is substantial evidence in the record, which
24  is not discussed by the ALJ, reflecting Plaintiff's activities of daily living were limited well before
25  this date.  (AR 733 (8/7/20 treatment notes describing "severe" bilateral knee pain which affects
26  "her ability to perform [] daily tasks"); AR 662-664 (7/20/21 exertional activities questionnaire
27  describing Plaintiff's inability to do cleaning, shopping, household chores); AR 977 (11/29/21
28  treatment notes stating pain impairs ability to perform household chores, drive, walk, run).)

8

Second, the ALJ attributed Plaintiff's condition in March 2023 to the adrenal deficiency which had since resolved and thus found it "not durational," but the ALJ does not cite to any medical evidence supporting that her musculoskeletal issues—as opposed to her nausea and vomiting—had improved during this time. (AR 106.) Rather, as discussed above, the evidence, including her use of walker, is to the contrary. Finally, the ALJ's reliance on the fact Plaintiff "is now walking with her daughter" ignores her testimony that she was only able to "last for about five to ten minutes. I can't do it anymore. I can't stand for long at all." (AR 428.)

### D. Inconsistencies Regarding Stopping Work

Finally, the ALJ noted "although the claimant testified that she stopped working due to her knees, she told her primary care provider she stopped working after her car accident in 2021 because she had anxiety about driving or getting to work." (AR 106 (citing AR 2979, 7/22/21 notes of visit with Dr. Beltran).) The ALJ seizes on this single statement in the visit notes from Plaintiff's annual exam with Dr. Beltran to discount her reports of pain. Nowhere else in the record—including in her social security application filed the day before—does the record indicate she stopped working due to anxiety regarding driving. (AR 443.) Further, the car accident occurred a month before this visit—in June 2021—and Plaintiff had not worked since her alleged disability onset date of September 4, 2020. (AR 423, 632, 638.) Accordingly, this single sentence from a note from Plaintiff's July 2021 visit with Dr. Beltran is not a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's testimony that she stopped working due to knee problems.

***

In sum, none of the reasons given by the ALJ for discounting Plaintiff's testimony meet the specific, clear, and convincing standard, and the ALJ's rejection of Plaintiff's subjective pain testimony was therefore in error.

### III. MEDICAL OPINION EVIDENCE

Under the regulations that apply to Plaintiff's application, the Commissioner no longer gives specific evidentiary weight to medical opinions, including the deference formerly given to the opinions of treating physicians. Instead, the Commissioner evaluates the "persuasiveness" of

9

all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions. *See Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Id.* at 791-92 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(2)). The third factor—"relationship with the claimant"—encompasses "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed, ... and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id.* at 792 (citing 20 C.F. R. § 404.1520c(c)(3)(i)–(v)). The ALJ must explain how she considered supportability and consistency, and may, but is not required, to explain how she considered factors three, four, and five. *See id.* at 792; *see also* 20 C.F.R. § 404.1520c(b)(2).

The "ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792 (cleaned up). "The agency must articulate how persuasive it finds all of the medical opinions and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* (cleaned up) (citing 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

Plaintiff contends the ALJ erred in finding Plaintiff's treating physician Dr. Beltran's

10

1  February 3, 2023 opinion unpersuasive because it was "not well supported (including by her own
2  objective findings) or consistent with the overall record" and it was inconsistent with the
3  "objective evidence." (AR 107.)
4      First, the ALJ's finding that Dr. Beltran's opinion was not supported by her own findings
5  is not supported by substantial evidence.  The ALJ emphasized Dr. Beltran's treatment notes from
6  the day she filled out Plaintiff's functional capacity questionnaire which indicated "claimant was
7  healthy-appearing and ambulated normally," but ignored the statements on the very same page
8  discussing her "c-spine and l-spine MRI" which "showed degenerative changes" and that "[s]he is
9  unable to stand or stay in one position for longer than 5 minutes." (AR 107 (citing AR (2949).)
10 Likewise, while the treatment notes document that up through February 2023 Plaintiff was
11 ambulating normally, they also note she has "Chronic diffuse arthralgias" and the pain is only
12 "mildly improved with celecoxib[2]" (AR 2954), she was given a toradol[3] injection (AR 2963), she
13 has "known arthritis of the c-spine, right hand pain and numbness and gripping problems due to
14 loss of strength" (AR 2969).  The ALJ erred by ignoring the contrary medical evidence and
15 focusing instead on the limited evidence which supported her finding of non-disability. *See*
16 *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001).
17     Second, Dr. Beltran's conclusions as to Plaintiff's lifting and postural limitations are
18 consistent with at least some of the objective evidence as discussed above.  However, the ALJ
19 only focuses on the evidence that is consistent with her conclusion and not the evidence that might
20 support Dr. Beltran's findings.  Because the ALJ erred in relying on only the evidence which
21 supports her finding while ignoring other contradictory evidence, her findings as to the
22 consistency of Dr. Beltran's findings with the objective medical evidence are not supported by
23 substantial evidence.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

## IV.  HARMLESS ERROR

25     Given the lack of substantial evidence to support the ALJ's consideration of the medical
26 evidence and subjective pain testimony, her decision cannot stand. The Court thus need not

---

[2] A NASID used to treat arthritis.
[3] Another NASID anti-inflammatory pain medication.

11

consider Plaintiff's other arguments regarding the additional medical evidence submitted to the Appeals Council. (Dkt. No. 8 at 25-27.) The ALJ's errors here go to the heart of the disability determination and are not harmless. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Had the ALJ not erred in her consideration of the medical opinion evidence and determining Plaintiff's credibility, the ALJ could have reasonably come to a different conclusion regarding Plaintiff's capacity to work. *See Stout*, 545 F.3d at 1056 (error was not harmless where crediting lay testimony supported a conclusion that the plaintiff's mental impairments would preclude him from returning to gainful employment).

**V. Remand for Further Proceedings or Payment of Benefits**

While Plaintiff initially asked the Court to remand the case for the payment of benefits or for further proceedings, in her reply brief, Plaintiff asks for remand for further proceedings. (Dkt. No. 13 at 5.) When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal citations omitted). Remand for further proceedings is proper here so the ALJ can fully consider Plaintiff's subjective reports of pain and Dr. Beltran's findings in the context of the entire 3000-page record.

**CONCLUSION**

For the reasons stated above, the Court REVERSES the ALJ's decision in part and REMANDS for further proceedings consistent with this Order.

This Order disposes of Docket Nos. 8, 12.

**IT IS SO ORDERED.**

Dated: March 31, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

12